United States Courts
Southern District of Texas
FILED

*October 28, 2020*

David J. Bradley, Clerk of Court

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**LEI GAO**<br>**a/k/a/ Jason Gao,**<br><br>**JASON OIL & GAS EQUIPMENT,**<br>**LLC, and**<br><br>**JASON ENERGY TECHNOLOGIES**<br>**Co., LTD.**<br><br>　　　**Defendants.** | **CRIMINAL NO.:**<br><br>**4:20-cr-527** |

## INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

### INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

### Defendant Entities and Persons

1.　　JASON ENERGY TECHNOLOGIES CO., LTD ("JET"), was a corporation organized and operating in the People's Republic of China (the "PRC" or China) and located in Yantai, China.  JET specialized in the research, development, manufacturing, and marketing of an oil and gas technology commercially known as "coiled tubing."  Coiled tubing is a developed technology with many applications in the underground drilling process for the oil and gas industry, including matrix and fracture stimulation, wellbore cleanout, logging, perforating, nitrogen kickoff, sand control, drilling, cementing, well circulation, and mechanical isolation ("Coiled Tubing").  JET had an investment or financial interest in the Houston-based, United States oil and gas company known as Jason Oil & Gas Equipment LLC.

2.      JASON OIL & GAS EQUIPMENT, LLC ("JOG") was a corporation organized

and incorporated in Texas in December 2011.  JOG maintained an operating office in Houston,

Texas, and was a direct business competitor of the Houston, Texas based oil and gas

manufacturing company referred to herein as "Victim Company."  JOG was involved in the

production and marketing of Coiled Tubing, and was associated with China-based JET.

Defendant Lei Gao ("Gao") was the General Manager of JOG from in or about October 2015 up

to his return to China in November 2019.  Co-Conspirator A was employed as a JOG corporate

officer in 2019.   JOG was financially associated with JET and shared common corporate

officers.

3.      Victim Company was a Houston, Texas-based oilfield products company that was

incorporated in 2007 in the State of Texas. Victim Company operated an oil and gas equipment

manufacturing facility in Texas, and was a prominent corporate and industry leader in the

production and marketing of Coiled Tubing.  Victim Company had developed over multiple

years an advanced version of Coiled Tubing that was produced and marketed domestically and

internationally under a well-known trade name (referred to herein as "Trade Name").  Victim

Company had established a domestic and international business engaged in the manufacturing

and distribution of Coiled Tubing, including a unique version developed and marketed as Trade

Name Coiled Tubing. This Trade Name Coiled Tubing involved a specialized technology based,

in part, on technical and engineering information that included unique program devices,

formulas, methods, techniques, processes, and procedures, in both tangible and intangible forms,

that had been stored and maintained both physically and electronically.  Victim Company

maintained a range of significant and reasonable security measures to keep such Trade Name

product information secret (the "Coiled Tubing Trade Secrets").  Victim Company derived

identifiable independent economic value, both actual and potential, by keeping the Coiled

Tubing Trade Secrets from not being generally known and not readily ascertainable through

proper means by the public.

4.      Defendant LEI GAO, a/k/a Jason Gao ("GAO"), was a citizen of the PRC and

served as the General Manager of JOG from in or around October 2015 through November 2019.

5.      Robert Erford, Jr. ("Erford"), was a U.S. citizen who was employed for

approximately ten years in total by Victim Company, including in the position as mill operator at

a production facility located in Dayton, Texas. While employed at Victim Company, and

unknown to Victim Company, Erford began to work in or about October 2019 for Defendants

JOG, GAO and Co-Conspirator A as a "contractor" for JOG with regard to providing consulting

services on Coiled Tubing technology.

6.      Co-Conspirator A was a citizen of the PRC and was employed as a corporate

officer of JOG in or around 2019, worked in association with GAO in the management of JOG

both before and after GAO departed in November 2019 to China, and participated with GAO in

dealing with Erford regarding acquiring Coiled Tubing technology that came from Victim

Company.

7.      Co-Conspirator B was the President of JET, based in JET's corporate office in the

PRC.

Introductory Allegations

8.      While employed at Victim Company, Erford had signed Non-Disclosure

Agreements that affirmed that he would (i) not reveal or use any Victim Company information

that he acquired while working at the Victim Company, including trade secrets, to the benefit of

other parties (including himself).

9.      In 2019 the Defendant GAO and Co-Conspirator A conspired with Erford to have him illegally remove, posses, and  transfer to GAO, Co-Conspirator A, and JET employees certain Victim Company Coiled Tubing Trade Secrets with regard to the manufacturing and production process for the economic benefit of JOG, JET, and parties other than the Victim Company.

Victim Company Trade Secrets and Security Protections

10.      Victim Company's technology, methods, and procedures included, but were not limited to, the following Trade Name Coiled Tubing Trade Secrets:

    a.   Trade Secret #1.  A confidential procedural document that related to the manufacture of Trade Name Coiled Tubing, which included specific development and production information relating to the scientific, technical, and engineering information that included data on the plans, compilations, designs, formulas, processes, procedures and programs relating to the production and manufacturing of the Trade Name Coiled Tubing.

    b.   Trade Secret #2.  A set of photographs displaying Victim Company's production facilities, processes, data, and equipment, which included schematics of processes and equipment used in the manufacturing of Trade Name Coiled Tubing. Trade Secret #2 contained data that represented Victim Company's unique plans and procedures that were not standard practice within the domestic or international Coiled Tubing industry.  These photographs displayed information that conveyed technical and engineering designs and equipment that related to the production, manufacturing, and testing of Trade Name Coiled Tubing.

     c.   Trade Secret # 3.  Victim Company unique chemical composition information with regard to the raw materials used by Victim Company to produce and manufacture Trade Name Coiled Tubing that had been developed through a confidential testing process.

11.    Victim Company protected the confidential information relating to its proprietary technology, Coiled Tubing designs and procedures, including the Trade Secrets #1, #2, and #3, to prevent disclosure and the unauthorized use, by a variety of measures, including but not limited to the following:

     a.   Password protected computers;

     b.   Segmented access to main file storage server with access limited to certain employees;

     c.   Victim Company secured its facility with a fence, security guard on duty during non-core business hours, and prohibited visitor photography in all production areas; and

     d.   Victim Company required employees with routine access to the confidential information to sign nondisclosure agreements, and performed training on the company Code of Conduct, which discusses the importance of confidentiality and on reporting the loss of confidential information.

## STATUTORY VIOLATIONS

## COUNT ONE

(18 U.S.C. §§ 1832(a)(5) Conspiracy to Commit Theft and Possession of Trade Secrets)

12.    The allegations in Paragraphs 1 through 9 of this Indictment are incorporated and re-alleged as if fully set forth herein.

13.    On a date unknown but at least by in or about October 2019, through in or about June 2020, in the Southern District of Texas, and elsewhere:

### LEI GAO
### JASON OIL & GAS EQUIPMENT, LLC
### and
### JASON ENERGY TECHNOLOGIES CO., LTD

the defendants, together with others known and unknown to the Grand Jury, did knowingly combine, conspire, confederate, and agree with each other to:

a.  knowingly and without authorization copy, duplicate, sketch, draw, photograph, download, alter, photocopy, replicate, transmit, deliver, send, communicate, and convey trade secrets belonging to Victim Company, with the intent to convert such trade secrets relating to a product used in and intended for use in interstate and foreign commerce, to the economic benefit of anyone other than the owner of such trade secrets, and intending and knowing that the offense would injure Victim Company, in violation of 18 U.S.C. § 1832(a)(2); and

b.  knowingly receive, buy, and possess trade secrets belonging to Victim Company, knowing the same to have been stolen, appropriated, obtained, and converted without authorization with the intent to convert such trade secrets relating to a product or service used in and intended for use in interstate and foreign commerce, to the economic benefit of anyone other than the owner of such trade

secrets, and intending and knowing that the offense would injure Victim

Company, in violation of 18 U.S.C. § 1832(a)(3).

## MANNER AND MEANS OF THE CONSPIRACY

14.     Defendants LEI GAO, on behalf of JASON OIL & GAS EQUIPMENT, LLC,

and others known and unknown to the Grand Jury, would and did carry out the conspiracy and

effect its unlawful objects though, among others, the following manner and means:

    a.  It was part of the conspiracy that members of the conspiracy, both known and

        unknown to the Grand Jury, developed Erford as a then-current employee of

        Victim Company for recruitment and hiring for the purpose of advancing and

        developing JET's research, development, and manufacturing capabilities; product

        technical knowledge; and specific product development with respect to Coiled

        Tubing technology.

    b.  It was part of the conspiracy that members of the conspiracy, both known and

        unknown to the Grand Jury, planned to and did copy, duplicate, download, sketch,

        draw, alter, photocopy, replicate, transmit, deliver, send, communicate, and

        convert trade secrets belonging to Victim Company, by accessing information by

        using Victim Company employee Erford.

    c.  It was part of the conspiracy that members of the conspiracy, both known and

        unknown to the Grand Jury, would acquire Victim Company trade secrets for the

        benefit and use of JOG, JET, and others.

    d.  It was part of the conspiracy that members of the conspiracy, both known and

        unknown to the Grand Jury, that JOG and JET would arrange to provide payments

        or transfer funds to pay members of the conspiracy.

e.    It was part of the conspiracy that GAO and Co-Conspirator A, and others both

known and unknown to the Grand Jury, would coordinate the transfer, receipt,

and possession of Victim Company trade secrets for the use and benefit of JOG

and JET in the development, production, and marketing of Coiled Tubing that

were or were to be part of the JOG and JET business.

## OVERT ACTS OF THE CONSPIRACY

In furtherance of the conspiracy, and to achieve the object and purposes thereof,

Defendants LEI GAO, and other conspirators both known and unknown to the Grand Jury,

committed and caused to be committed the following overt acts, among others, in the Southern

District of Texas and elsewhere:

15.    On or about April 10, 2019, Erford emailed GAO to inquire about working at a

managerial position at JOG. GAO responded by requesting that Erford provide a copy of his

resume.

16.    On or about April 22, 2019, Erford emailed a copy of his resume to GAO.

17.    On or about September 30, 2019, GAO communicated with Erford to inform him

that GAO was in Houston and asked if Erford wanted to meet.

18.    On or about October 2, 2019, GAO emailed Erford to propose a meeting on

October 4, 2019.

19.    In or about October and November 2019 GAO met three times with Erford at

JOG's offices in Huston, Texas, to discuss Erford's work at Victim Company and knowledge of

Coiled Tubing technology.

20.     On or October 2019, GAO met with Erford to provide him with a list of questions and problems concerning certain manufacturing issues that JET had experienced in the manufacturing process of Coiled Tubing, and Erford offered to assist GAO and JET.

21.     On or about October 21, 2019, GAO met with Erford to discuss having Erford travel to China pursuant to a Consultancy Agreement for the purpose of providing assistance to JET with regard to JET's Coiled Tubing manufacturing process.

22.     Between October 14, 2019, and November 8, 2019, GAO communicated with Erford via telephone text messaging approximately 208 times.

23.     On October 21, 2019, GAO exchanged the following text communications with Erford:

> Erford: "I really appreciate the chance to meet with you today and also for the opportunity you have offered to me. I'm very interested in doing so. I'm looking forward to keeping in contact with you. If I happen to miss an email from you, I can be reached anytime by text or phone call. Thanks again for your time."

> GAO:  "Hi Robert, I am very happy to meet you today too, thank you for taking my invitation, I will definitely be in touch with you" and "And I will keep you posted once I get any feedback from my plant."

24.     On October 22, 2019, GAO informed Erford of the decision to hire Erford as a consultant and bring him to China via this text communication:

> GAO: "…we confirmed to hire you come to China for consulting job (sic)…Our CT [coiled tubing] manufacturing plant manager is hoping you can. (sic) stay longer like two weeks, is this possible?....And we hope you can come to China ASAP"

25.     On October 22, 2019, Erford communicated his agreement to work in China with GAO, and GAO discussed with Erford obtaining a Chinese visa and meeting again to discuss further details regarding Erford's travel to China.  The communications included this direction by GAO:

"Hi Robert, please send me your passport number as soon as you get it, I will have our China plant to send an invitation letter for your Chinese visa application".

26.     On or about October 30, 2019, GAO emailed a draft Consultancy Agreement to Erford relating to his work for JET on Coiled Tubing technology.

27.     On or about October 31, 2019, GAO communicated with Erford to assure him that their work on obtaining Victim Company Coiled Tubing technology would be confidential and never disclosed to others in the United States:

> "You are 100% protected by me"
> "I will never ever tell anybody in US about our communications"
> "Trust me, Robert. I will never let you down"
> "I promise you that nobody in the states will know you had contact with me"
> "By the way, I. (sic) will pay your travel, hotels and meals, you can add into the agreement if you like"

28.     On or about October 31, 2019, GAO emailed Erford a copy of a Consultancy Agreement with a provision regarding JOG's payment Erford's travel expenses to China.

29.     On or about November 5, 2019, GAO asked Erford to bring a physical product sample from the Victim Company to China on his upcoming visit:

> GAO: "Hi, if you can bring a small piece of sample material of (Trade Name Coiled Tubing) I will very appreciate (sic)."
> Erford: "Already on it" and "Gathering information already."
> GAO: "OK got you, is that possible to get material sample? please be very careful, I don't want to generate any problem on you (sic)".
> Erford: "Yes its possible."
> GAO: "I must protect you."

30.     On or about November 7, 2019, GAO, Co-Conspirator A, and Erford met at JOG's Houston office to discuss Erford obtaining information relating to Victim Company's Coiled Tubing technology, with GAO telling Erford that GAO wanted "anything and everything" Erford could get.

31.     On or about November 7, 2019, GAO and Co-Conspirator A met with Erford at the JOG offices, at which time GAO gave Erford a Consultancy Agreement, which Erford signed, providing that Erford would work in China as a "consultant" to assist JOG regarding Coiled Tubing technology, and would be paid $1,000 each day of a 15 day visit.  This Agreement included a confidentiality provision.  At that meeting, Co-Conspirator A provided Erford with a $1,000 payment.  GAO and Co-Conspirator A also provided Erford with a letter from Co-Conspirator B, the General Manager of JET, that invited Erford to visit "to have (sic) technical exchange and discussion," which "will help us to promoting (sic) our manufacturing efficiency, reduce machine failure and increase production capacity."

32.     On November 8, 2019, Erford visited a Chinese Consulate Office to obtain a visa and in support of his application presented the JET invitation letter.

33.     On November 8, 2019, GAO communicated with Erford regarding concerns over his application for a Chinese visa, during which GAO offered suggestions about different possible responses to conceal the nature of his trip to China should Victim Company learn about this trip and ask him about the purpose.

34.     From October through December 2019, including when Erford travelled to China, Erford used his cellular phone to store approximately 110 photographs of the interior and exterior of the Victim Company Coiled Tubing production facility that copied and captured a range of production facility equipment, as well as information that reflected confidential data and manufacturing processes.

35.     In or about November 2019, continuing into December 2019, Erford communicated with GAO in order to transfer and transmit the Victim Company equipment and data photographs, a number of which included Victim Company's Coiled Tubing Trade Secrets.

36.     On or about November 11, 2019, GAO departed the United States for Beijing, China, and Co-Conspirator A assumed GAO's management position at JOG.

37.     On or about November 22, 2019, Erford traveled from Houston, Texas to Beijing, China, to meet with GAO and Co-Conspirator B at the JET offices.

38.     In late November 2019, Erford, without authorization, (i) used a Victim Company computer to copy and print a Victim Company confidential and proprietary document that included Trade Secret #1 information that directly related to the manufacturing process of Trade Name Coiled Tubing, and (ii) removed and transferred the document containing Trade Secret #1 from the Victim Company's facilities.

39.     On or about November 22, 2019, Erford, without authorization, transported and transferred the Victim Company document that contained Trade Secret #1 from the United States to the PRC for the benefit and use of JET.

40.     From on or about November 25, 2019, to on or about November 29, 2019, Erford held meetings with GAO and JET officials, including Co-Conspirator B, at JET's offices in China and at JET's Coiled Tubing facilities to discuss Coiled Tubing technology, including Victim Company proprietary Coiled Tubing technology, practices, and procedures.

41.     While in meetings at the JET offices, Erford transferred to GAO via the WeChat telephone application a set of photographs copied by Erford that related to Victim Company facilities, processes, data, and equipment, including copies of various schematics of processes and equipment used in the manufacturing of Trade Name Coiled Tubing that included Trade Secret #2.  Erford additionally provided JET officials with photographs he took at Victim Company's facilities that depicted specific data describing the chemical compositions of the raw materials used to produce and manufacture Trade Name Coiled Tubing, which included Trade

Secret #3 information, together with an actual physical sample of raw materials used by Victim Company to produce Trade Name Coiled Tubing.

42.     In or about late November 2019, JET officials paid Erford funds in the equivalent of $7,500, which amount had been approved by Co-Conspirator B.

43.     On or about November 30, 2019, GAO emailed Erford a checklist of items and information sought by both JOG and JET that consisted of nineteen questions relating to Coiled Tubing production, four of which explicitly sought Victim Company Trade Name Coiled Tubing trade secret information.

44.     In or about December 2019, Erford obtained, collected, and copied without authorization a set of Victim Company manufacturing information that was responsive to JET questions that had been provided; Erford transferred and transmitted this Victim Company Coiled Tubing information via the encrypted WeChat application to GAO.

45.     On or about December 4, 2019, GAO instructed Erford to delete all WeChat communications between GAO, Co-Conspirator A, and Erford.

46.     On or about January 8, 2020, GAO communicated with a undercover law enforcement agent acting on behalf of Erford (the "UCA") via the WeChat encrypted application to seek additional sizing information for Coiled Tubing products relating to various outside diameter dimensions.  As part of this communication, GAO told the UCA: "I hate to ask you again, but our mill guys are waiting for the tube OD data from you, once again I am so sorry to bother you too much."

47.     On or about March 9, 2020, GAO communicated with the UCA via the encrypted WeChat application to ask for Victim Company financial information.

Page 13
Indictment

48.     On or about March 9, 2020, GAO further communicated via the encrypted WeChat application with the UCA to offer payment of $200 for what GAO requested as "Victim Company Precision Manufacturing Cost" information.

49.     On or about March 13, 2020, GAO communicated with the UCA via the encrypted WeChat application and received a document from the UCA that purported to be the "Victim Company Precision Manufacturing Cost" information, which included a trade secret warning.

50.     On or about March 17, 2020, an employee of a corporate affiliate of JET and JOG provided $200 to Erford as had been promised by GAO.

51.     On or about June 16, 2020, GAO and the UCA communicated via the encrypted WeChat application regarding newly publicized JET Coiled Tubing technology relating to "quench & tempered tubing" wherein GAO thanked Erford for previously providing Victim Company Coiled Tubing technical information.

All in violation of 18 U.S.C. §§ 1832(a)(5)

## <u>COUNT TWO</u>

(18 U.S.C. §§ 1832(a)(3) and Section 2 (Receiving and Buying Trade Secrets and Aiding and Abetting))

1.     The allegations in Paragraphs 1 through 9 of this Indictment are incorporated and re-alleged as if fully set forth herein

2.     In or about October 2019 through in or about December 2020, in the Southern District of Texas, and elsewhere:

**LEI GAO**
**JASON OIL & GAS EQUIPMENT, LLC**
**and**
**JASON ENERGY TECHNOLOGIES CO., LTD**

the defendants herein, aiding and abetting each other and others known and unknown to the Grand Jury, did knowingly with the intent to convert a trade secret, that is related to a product or service used in and intended for use in interstate and foreign commerce, to the economic benefit of anyone other than the trade secret's owner, and intending and knowing that the offense would injure Victim Company, did knowingly and without authorization receive, buy, and possess certain Victim Company proprietary trade secrets, namely, Trade Secret #1, Trade Secret #2, and Trade Secret #3, knowing the same to have been stolen or appropriated, obtained, and converted without authorization, to wit, specific technical specifications, financial, business, scientific, technical, economic, and engineering information, including plans, compilations, program devices, formulas, designs, methods, techniques, processes, procedures, programs, and codes, tangible and intangible, regarding the production of a product known as Trade Name Coiled Tubing.

In violation of 18 U.S.C. §§ 1832(a)(3) and 2.

## COUNT THREE

(18 U.S.C. §§ 1832(a)(3) and (4) (Attempted Receiving and Buying of Trade Secrets))

1.      The allegations in Paragraphs 1 through 9 of this Indictment are incorporated and re-alleged as if fully set forth herein

2.      On or about March 9, 2020, in the Southern District of Texas, and elsewhere:

**LEI GAO**
**JASON OIL & GAS EQUIPMENT, LLC**
**and**
**JASON ENERGY TECHNOLOGIES CO., LTD**

the defendants herein, did knowingly with the intent to convert a trade secret, that is related to a product or service used in and intended for use in interstate and foreign commerce, to the economic benefit of anyone other than the trade secret's owner, and intending and knowing that

the offense would injure Victim Company, did knowingly and without authorization attempt to receive, buy, and possess certain Victim Company proprietary trade secrets, namely, Precision Cost Manufacturing Information, knowing the same to have been stolen or appropriated, obtained, and converted without authorization.

In violation of 18 U.S.C. §§ 1832(a)(3) and (4).

### NOTICE OF INTENTION TO SEEK CRIMINAL FORFEITURE

Pursuant to Title 18, United States Code, Sections 1834 and 2323, the United States gives notice that upon a defendant's conviction of an offense charged in this Indictment, the United States will seek forfeiture of all property used to commit or facilitate the offense, all proceeds from the offense, and all property derived from proceeds obtained, directly or indirectly, from the offense.

The United States gives notice that it will seek a money judgment. In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exist, the United States will seek to forfeit any other property of the defendants up to the amount of the money judgment.

All pursuant to 18 U.S.C. §§ 1834 and 2323.

A TRUE BILL
Original Signature on file

_____
GRAND JURY FOREPERSON

**Ryan K. Patrick**
United States Attorney

By: _____

S. Mark McIntyre
Assistant United State Attorney
Southern District of Texas

Page 16
Indictment

Carolyn Ferko by permission

Carolyn Ferko
Assistant United State Attorney
Southern District of Texas


**John C. Demers**
Assistant Attorney General

William Mackie by permission

William Mackie
Trial Attorney
U.S. Department of Justice National Security Division
Counterintelligence & Export Control Section