| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:20-CR-527 |
| | § | |
| JASON ENERGY TECHNOLOGIES | § | |
| CO., LTD., | § | |
| DEFENDANT | § | |

## DEFERRED PROSECUTION AGREEMENT

Defendant JASON ENERGY TECHNOLOGIES CO., LTD ("the Company"), a corporation organized and operating in the People's Republic of China ("PRC") and located in the city of Yantai in the People's Republic of China, by its undersigned attorneys, pursuant to authority granted by its Board of Directors, and the United States Attorney's Office for the Southern District of Texas and the United States Department of Justice's Criminal Division (collectively, the "Government"), enter into this deferred prosecution agreement ("the Agreement"), the terms of which are specified below.

### Criminal Indictment and Acceptance of Responsibility

1. JASON ENERGY acknowledges and agrees that, at the expiration of the Term of the Agreement, the Government will move to dismiss the indictment

1

(dkt. no. 1) filed in the United States District Court for the Southern District of Texas. In doing so, JASON ENERGY knowingly waives all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, 18 U.S.C. § 3161, and Federal Rule of Criminal Procedure 48(b).

2.  JASON ENERGY admits, accepts, and acknowledges that it is responsible under United States law for the acts of its officers, directors, employees, and agents as charged in the indictment and as set forth in the Statement of Facts attached hereto as Attachment A and incorporated by reference into this Agreement, and that the allegations described in the indictment and the facts described in Attachment A are true and accurate. Should the Government pursue the prosecution that is deferred by this Agreement, JASON ENERGY agrees that it will neither contest the admissibility of, nor contradict, in any such proceeding, the Statement of Facts.

## Term of the Agreement

3.  This Agreement is effective for a period beginning on the date on which this Agreement is filed and ending four years from that date ("the Term"). However, JASON ENERGY agrees that, should the Government determine, in its sole discretion, that the Company has knowingly violated any provision

2

of this Agreement or has failed to completely perform or fulfill each of the Company's obligations under this Agreement, an extension or extensions of the term of the Agreement may be imposed by the Government, in its sole discretion, for up to a total additional period of two years, without prejudice to the Government's right to proceed as provided in Paragraphs 12-14 below. Any extension of the Agreement extends all terms of this Agreement for an equivalent period.

## Relevant Considerations

4. The Government enters into this Agreement based on the individual facts and circumstances presented by this case and JASON ENERGY. Among the facts considered were the following:

    a. the Company did not receive voluntary disclosure credit because it did not voluntarily and timely disclose to the Government the conduct described in the attached Statement of Facts;

    b. the Company did not receive credit for its cooperation with the Government's investigation because it did not cooperate fully with the Government;

    c. the Company engaged and is continuing to engage in remedial measures, including terminating the employee involved in the

misconduct and agreeing to halt all sales of coiled tubing products (whether conventional or advanced) into the United States for the Term of the Agreement;

d. the Company has enhanced and will continue to enhance its compliance program and internal controls, including continuing to ensure that its compliance program satisfies the minimum elements set forth in Attachment B to this Agreement (Corporate Compliance Program);

e. the Company's affiliate, Jason Oil & Gas Equipment, LLC, also involved in the conduct described in the Statement of Facts, agreed to plead guilty to count three of the indictment and make a total payment of $4,100,000 and agrees to a term of probation of four years;

f. based on the Company's remediation, the state of its compliance program, and the Company's agreement to report, through its outside counsel, to the Government as set forth in Attachment C to this Agreement (Corporate Compliance Reporting), the Government determined that an independent compliance monitor was unnecessary;

g. the nature and seriousness of the offense conduct was carried out, or at least condoned, by employees at the highest level of the organization

4

and involved secret payments to and communications with a co-conspirator;

h. the Company has no prior criminal history; and

i. accordingly, despite the nature, seriousness, pervasiveness, and scope of the offense conduct, due to the considerations outlined in 4.a through 4.h above, the Government determined that a deferred prosecution agreement with terms as set forth herein is sufficient but not greater than necessary to achieve the purposes described in 18 U.S.C. § 3553.

Payment of Monetary Penalty

5. The Government and JASON ENERGY agree to and adopt the United States Sentencing Guidelines calculation in the Plea Agreement entered by co-defendant Jason Oil & Gas Equipment, LLC. All monetary penalties related to JASON ENERGY, described in Paragraph 8.b of the Plea Agreement, will be paid to the United States Treasury within 30 days of approval of this Agreement by payment from JASON ENERGY's affiliate Jason Oil & Gas Equipment, LLC. The Government and JASON ENERGY agree that this fine is appropriate given the facts and circumstances of this case, including JASON ENERGY'S moratorium on sales of all coiled tubing products into the United States. The monetary penalty is final and shall not be refunded.

Furthermore, nothing in this Agreement shall be deemed an agreement by the Government that the monetary penalty is the maximum penalty that may be imposed in any future prosecution in the event of a breach of this Agreement. The Government moreover is not precluded from arguing in any future prosecution that the Court should impose a higher fine; although under those circumstances, the Government agrees it will recommend to the Court that any amount paid under this Agreement should offset any fine the Court imposes as part of a future judgment.

## Conditional Release from Liability

6. In return for JASON ENERGY's compliance with the terms and conditions of this Agreement, the Government agrees, subject to Paragraphs 12-15 below, not to use any information related to the conduct described in the attached Statement of Facts against the Company in any criminal case, except: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code. In addition, the Government agrees, except as provided herein, that it will not bring any criminal or civil case against JASON ENERGY related to the

6

conduct of present and former officers, directors, employees, agents, and consultants, as described in the attached Statement of Facts, except as noted below.

a. This Paragraph does not provide any protection against prosecution for any future conduct by JASON ENERGY or any conduct not described in the Statement of Facts.

b. In addition, this Paragraph does not provide any protection against prosecution of any present or former director, officer, employee, shareholder, agent, consultant, contractor, or subcontractor of JASON ENERGY for any violations committed by them, including Lei Gao.

<u>Corporate Compliance Program</u>

7. JASON ENERGY represents that it has implemented and will continue to implement a compliance and ethics program designed to prevent and detect theft of trade secrets throughout its operations, including, without limitation, all coiled tubing research, development, manufacturing, marketing, and sales operations at the JASON ENERGY facility described in the Statement of Facts, as well as any operations performed in connection therewith by any affiliates, agents, joint ventures, contractors, and subcontractors. The compliance program shall include, but not be limited to, the elements set forth

in Attachment B. Implementation of these policies and procedures shall not be construed in any future enforcement proceeding as providing immunity or amnesty for any crimes not disclosed to the Government as of the date of the signing of this Agreement for which JASON ENERGY would otherwise be responsible.

8. To address any deficiencies in its internal controls, policies, and procedures, JASON ENERGY represents that it has undertaken, in a manner consistent with all of its obligations under this Agreement, a review of its existing internal controls, policies, and procedures regarding compliance with intellectual property laws and other criminal laws prohibiting theft of trade secrets. JASON ENERGY further represents that it will conduct such reviews annually to ensure that its controls, policies, and procedures are consistent with applicable PRC law and regulations, including data privacy and national security laws; United States laws; and its obligations under this Agreement. If necessary and appropriate, JASON ENERGY will adopt new or modify existing internal controls, policies, and procedures to ensure that it maintains a rigorous compliance program designed to prevent and detect violations of criminal laws prohibiting theft of trade secrets. Should it have any doubts, JASON ENERGY can consult with the Government regarding its remediation

and implementation of any compliance program and internal controls, policies, and procedures that relate to compliance with applicable intellectual property laws and other criminal laws prohibiting theft of trade secrets.

## Corporate Compliance Reporting

9. JASON ENERGY agrees that—subject to applicable United States and PRC law and regulations, including data privacy and national security laws—it will report through its outside counsel to the Government annually during the Term regarding remediation and implementation of the compliance measures described in Attachment B. These reports will be prepared in accordance with Attachment C.

## Deferred Prosecution

10. In consideration of the undertakings agreed to by the Company herein, the Government agrees that any prosecution of JASON ENERGY for the conduct charged in the indictment and as set forth in the attached Statement of Facts, be and hereby is deferred for the Term of this Agreement.

11. The Government further agrees that if JASON ENERGY fully complies with all of its obligations under this Agreement, the Government will not continue the criminal prosecution against the Company described in Paragraph 1, and at the conclusion of the Term, this Agreement shall expire. Within 30 days of

the Agreement's expiration, the Government shall seek dismissal with prejudice of the indictment filed against JASON ENERGY described in Paragraph 1.

## Breach of the Agreement

12. If, during the Term of the Agreement, the Government, in its sole discretion, determines that JASON ENERGY has (a) committed any felony under federal law subsequent to the signing of this Agreement, (b) at any time provided deliberately false, incomplete, or misleading information, or (c) otherwise breached the Agreement, the Company shall thereafter be subject to prosecution for the criminal violations set forth in the indictment and Statement of Facts, as well as any other criminal violation of which the Government has knowledge. Any such prosecution may be premised on information provided by JASON ENERGY. Any such prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Company notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the expiration of the Term plus one year. Thus, by signing this Agreement, JASON ENERGY agrees that the statute of limitations with

respect to any prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year.

13.  In the event the Government determines that JASON ENERGY has breached this Agreement, the Government agrees to provide the Company with written notice of such breach before instituting any prosecution resulting from such breach. JASON ENERGY shall, within 30 days of receipt of such notice, have the opportunity to respond to the Government in writing to explain the nature and circumstances of the alleged breach, demonstrate that the breach was not material or knowing and willful, demonstrate that the actions taken to address and remediate the situation, or demonstrate that no breach occurred. The Government will consider such a response in determining whether to institute prosecution.

14.  In the event the Government determines that JASON ENERGY breached this Agreement: (a) all statements made by or on behalf of JASON ENERGY to the Government or to the Court, including the attached Statement of Facts, and any testimony given by JASON ENERGY before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the

Government against JASON ENERGY and (b) JASON ENERGY shall not assert any claim under the United States Constitution, Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, or any other federal rule that statements made by or on behalf of JASON ENERGY prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed. The decision whether conduct or statements of any current director or employee, or any person acting on behalf of, or at the direction of, JASON ENERGY will be imputed to the Company for the purpose of determining whether JASON ENERGY has violated any provision of this Agreement shall be in the sole discretion of the Government.

15. JASON ENERGY acknowledges that the Government has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if JASON ENERGY breaches this Agreement and this matter proceeds to judgment. JASON ENERGY further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

## Sale or Merger of JASON ENERGY

16. JASON ENERGY agrees that in the event it sells, merges, or transfers all or substantially all of its business operations as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, or transfer, it shall include in any contract for sale, merger, or transfer a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement.

## Public Disclosure

17. JASON ENERGY agrees and acknowledges that this Agreement and its Attachments will be filed with the Court.

18. JASON ENERGY expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents, or any other person authorized to speak for the Company make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by JASON ENERGY set forth above or the facts described in the attached Statement of Facts. Any such contradictory statement shall, subject to cure rights of JASON ENERGY described below, constitute a breach of this Agreement and JASON ENERGY thereafter shall be subject to prosecution as described in Paragraphs 12-15 of this Agreement. The decision whether any public

13

statement by any such person contradicting a fact contained in the Statement of Facts will be imputed to JASON ENERGY for the purpose of determining whether they have breached this Agreement shall be at the sole discretion of the Government. If the Government determines that a public statement by any such person contradicts in whole or in part a statement contained in the Statement of Facts, the Government shall so notify JASON ENERGY, and the Company may avoid a breach of this Agreement by publicly repudiating such statement within five business days after notification. Consistent with the obligations of JASON ENERGY as set forth above, JASON ENERGY shall be permitted to raise defenses and to assert affirmative claims in civil and regulatory proceedings relating to the matters set forth in the Statement of Facts. This Paragraph does not apply to any statement made by any present or former officer, directors, employee, or agent of JASON ENERGY during any criminal, regulatory, or civil case against such individual, unless such individual is speaking on behalf of the Company.

Limitations on Binding Effect of Agreement

19. This Agreement is binding on JASON ENERGY, the United States Attorney's Office for the Southern District of Texas, and the United States Department of Justice, Criminal Division, but specifically does not bind any other federal

agencies, or any state, local, or foreign law enforcement or regulatory agencies, or any other authorities, although the United States Attorney's Office for the Southern District of Texas will bring the cooperation of JASON ENERGY and its compliance with its other obligations under this Agreement to the attention of such agencies and authorities if requested to do so by the Company.

Notice

20. Any notice to the Government under this Agreement shall be given by personal delivery, delivery by a recognized delivery service, or registered or certified mail, addressed to Assistant United States Attorneys Carolyn Ferko and S. Mark McIntyre, U.S. Attorney's Office for the Southern District of Texas, 1000 Louisiana, 23rd Floor, Houston, Texas, 77002. Any notice to JASON ENERGY under this Agreement shall be given by personal delivery, delivery by a recognized delivery service, or registered or certified mail, addressed to Peter S. Spivack, Hogan Lovells US LLP, Columbia Square, 555 Thirteenth Street, NW, Washington, D.C. 20004. Notice shall be effective upon actual receipt by the Government or JASON ENERGY.

Complete Agreement

15

21. This Agreement sets forth all the terms of the Agreement between JASON ENERGY and the Government. No amendments, modifications, or additions to this Agreement shall be valid unless they are in writing and signed by the Government, the attorneys for JASON ENERGY, and a duly authorized representative of JASON ENERGY.

**AGREED:**

**FOR THE COMPANY:**

Date: _September 9, 2021_                     By: _Eva Zhang_
                                              Eva Zhang
                                              Corporate Representative & Counsel,
                                              JASON ENERGY

Date: September 8, 2021                       By: _Peter Spivack_
                                              Peter S. Spivack
                                              Hogan Lovells US LLP
                                              555 Thirteenth Street, NW
                                              Washington, DC 20004-1109
                                              Counsel for JASON ENERGY

**FOR THE UNITED STATES OF AMERICA:**

Kenneth A. Polite, Jr.                        Jennifer B. Lowery
Assistant Attorney General                    Acting Attorney for the United States
United States Department of Justice           United States Attorney's Office
                                              Southern District of Texas

BY: ___  _____

       Anand B. Patel                       Carolyn Ferko
       Trial Attorney                       S. Mark McIntyre
                                        Assistant United States Attorneys

# COMPANY OFFICER'S CERTIFICATE

I have read this Agreement and carefully reviewed every part of it with outside counsel for JASON ENERGY (the "Company"). I understand the terms of this Agreement and voluntarily agree, on behalf of the Company, to each of its terms. Before signing this Agreement, I consulted outside counsel for the Company. Counsel fully advised me of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement.

I have carefully reviewed the terms of this Agreement with the Board of Directors of the Company. I have advised and caused outside counsel for the Company to advise the Board of Directors fully of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of the Company, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am the In-House Counsel for the

18

Company and that I have been duly authorized by the Company to execute this Agreement on behalf of the Company.

JASON ENERGY

Date: _September 9, 2021_    By: _Eva Zhang_
                                   Eva Zhang
                                   Corporate Representative & Counsel,
                                   JASON ENERGY

## CERTIFICATE OF COUNSEL

I am counsel for JASON ENERGY (the "Company") in the matter covered by this Agreement. In connection with such representation, I have examined relevant Company documents and have discussed the terms of this Agreement with the Company's Board of Directors. Based on our review of the foregoing materials and discussions, I am of the opinion that the representative of the Company has been duly authorized to enter into this Agreement on behalf of the Company and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of the Company and is a valid and binding obligation of the Company. Further, I have carefully reviewed the terms of this Agreement with the Board of Directors and the Legal Director and Compliance Representative for the Company. I have fully advised them of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions and of the consequences of entering into this Agreement. To my knowledge, the decision of the Company to enter into this Agreement, based on the authorization of the Board of Directors, is an informed and voluntary one.

Date: September 8, 2021  By: *Peter Spivack*
           Peter S. Spivack
           Hogan Lovells US LLP
           555 Thirteenth Street, NW
           Washington, DC 20004-1109
           Counsel for JASON ENERGY

## STATEMENT OF FACTS

1. JASON ENERGY TECHNOLOGIES CO., LTD, was a corporation organized and operating in the city of Yantai in the People's Republic of China (the "PRC"). JASON ENERGY specialized in the research, development, manufacturing, and marketing of an oil and gas technology commercially known as "coiled tubing." Coiled tubing refers to a continuous length of small-diameter steel pipe, typically made by welding smaller steel strips together. Coiled tubing products have many applications in the underground drilling process for the oil and gas industry, including matrix and fracture stimulation, wellbore cleanout, logging, perforating, nitrogen kickoff, sand control, drilling, cementing, well circulation, and mechanical isolation. JASON ENERGY had an investment and financial interest in the Houston-based oil and gas company known as Jason Oil & Gas Equipment LLC.

2. JASON OIL & GAS EQUIPMENT, LLC, was a corporation organized and incorporated in Texas in December 2011. Jason Oil & Gas maintained an operating office in Houston, Texas, and was a direct business competitor of Global Tubing LLC. Jason Oil & Gas was involved in the sale and marketing of coiled tubing and was an affiliate of JASON ENERGY. Defendant Lei

Gao, who is a fugitive, was the General Manager of Jason Oil & Gas from in or about October 2015 until his return to the PRC in November 2019.

3. Global Tubing was a Houston-based oilfield products company that was incorporated in 2007 in the State of Texas. Global Tubing operated an oil and gas equipment manufacturing facility in Texas and was a prominent corporate and industry leader in the development, production, and marketing of coiled tubing. Global Tubing had developed over multiple years an advanced version of coiled tubing that was produced and marketed domestically and internationally. Conventional coiled tubing was subjected to additional processes, including quenching and tempering, to create advanced coiled tubing, which provided superior strength and flexibility over conventional coiled tubing products.

4. Person 1 was a U.S. citizen who was employed for approximately ten years by Global Tubing, including in the position as mill operator at a production facility located in Dayton, Texas.

5. While employed at Global Tubing, and unknown to Global Tubing, Person 1 began to work in or about October 2019 for Defendants Jason Oil & Gas, JASON ENERGY, and Gao as a "contractor" providing consulting services on coiled tubing technology.

6.  Starting in November 2019, Gao and Person 1 began communicating via WeChat, an encrypted messaging application popular in the PRC.

7.  In December 2019, Global Tubing became aware that Person 1 was providing Global Tubing information to Gao, Jason Oil & Gas, and JASON ENERGY and notified federal law enforcement.

8.  Starting in January 2020, an undercover law enforcement officer purporting to be Person 1 (the "UCA") took over communications with Gao via WeChat.

9.  On or about January 8, 2020, Gao communicated with the UCA via WeChat. Gao sought additional technical information related to Global Tubing's coiled tubing products, specifically, outside tube diameter sizes for various products. As part of this communication, Gao told the UCA: "I hate to ask you again, but our mill guys are waiting for the tube OD [outside diameter] data from you, once again I am so sorry to bother you too much."

10. On or about March 9, 2020, Gao communicated with the UCA via WeChat to ask for Global Tubing financial information.

11. On or about March 9, 2020, Gao further communicated with the UCA via WeChat to offer payment of $200 for what Gao requested as "Global Tubing Precision Manufacturing Cost" information.

12. On or about March 13, 2020, Gao communicated with the UCA via WeChat and received a document from the UCA that purported to be the "Global

Tubing Precision Manufacturing Cost" information, which included designations indicating that the document contained trade secret information belonging to Global Tubing.

13. On or about March 17, 2020, an employee of a corporate affiliate of JASON ENERGY and Jason Oil & Gas personally provided $200 to Person 1 at Gao's request on or around March 9th.

14. On or about June 16, 2020, Gao and the UCA communicated via WeChat regarding newly publicized JASON ENERGY coiled tubing technology relating to "quench & tempered tubing" wherein Gao thanked Person 1, whom the UCA was impersonating, for providing helpful information.

## ATTACHMENT B

## CORPORATE COMPLIANCE PROGRAM

To address any deficiencies in its internal controls, compliance code, policies, and procedures regarding compliance with the Economic Espionage Act, 18 U.S.C. § 1831 *et seq.*, and other applicable trade secrets theft laws, JASON ENERGY agrees to continue to conduct, in a manner consistent with all of its obligations under this Agreement, appropriate reviews of its existing internal controls, policies, and procedures.

Where necessary and appropriate, the Company agrees to modify its compliance program, including internal controls, compliance policies, and procedures in order to ensure that it maintains: (a) an effective system of internal controls designed to ensure compliance with trade secrets theft laws and the Company's compliance code and (b) a rigorous compliance program that incorporates relevant internal compliance controls, as well as policies and procedures designed to effectively detect and deter violations of the Economic Espionage Act and other applicable trade secrets theft laws. At a minimum, this should include, but not be limited to, the following elements to the extent they are not already part of the Company's, or its subsidiaries' or controlled entities', existing internal controls, compliance code, policies, and procedures:

1

*High-Level Commitment*

1.   The Company will ensure that its directors and senior management provide strong, explicit, and visible support and commitment to its corporate policy against violations of the trade secrets theft laws and its compliance code.

*Policies and Procedures*

2.   The Company will develop and promulgate a clearly articulated and visible corporate policy against violations of the Economic Espionage Act and other applicable trade secrets theft laws, which policy shall be memorialized in a written compliance code.

3.   The Company will develop and promulgate compliance policies and procedures designed to reduce the prospect of violations of the trade secrets theft laws and the Company's compliance code, and the Company will take appropriate measures to encourage and support the observance of ethics and compliance policies and procedures against violation of the trade secrets theft laws by personnel at all levels of the Company. These policies and procedures shall apply to all directors, officers, and employees and, where necessary and appropriate, outside parties acting on behalf of the Company, including but not limited to, agents and intermediaries, consultants, representatives, distributors, teaming partners, contractors and suppliers, consortia, and joint venture partners (collectively, "agents and business partners"). The Company

shall notify all employees that compliance with the policies and procedures is the duty of individuals at all levels of the company. Such policies and procedures shall address:

    a. handling of non-public, third-party information;

    b. onboarding and exit procedures;

    c. non-disclosure and confidentiality agreements;

    d. employment agreements;

    e. audits by the compliance team; and

    f. training on trade secrets policies and procedures.

*Periodic Risk-Based Review*

4. The Company will develop these compliance policies and procedures based on a periodic risk assessment addressing the individual circumstances of the Company, in particular the trade secrets theft risks facing the Company, including, but not limited to, its geographical organization, relevant laws in the jurisdictions in which it operates, employee and consultant hiring, and equipment and vendor use.

5. The Company shall review its trade secrets theft compliance policies and procedures no less than annually and update them as appropriate to ensure their continued effectiveness, taking into account relevant developments in the field and evolving international and industry standards.

*Proper Oversight and Independence*

6.  The Company will assign responsibility to one or more senior corporate executives of the Company for the implementation and oversight of the Company's trade secrets compliance code, policies, and procedures. Such corporate official(s) shall have the authority to report directly to independent monitoring bodies, including internal audit, the Company's Board of Directors, or any appropriate committee of the Board of Directors, and shall have an adequate level of autonomy from management as well as sufficient resources and authority to maintain such autonomy.

*Training and Guidance*

7.  The Company will implement mechanisms designed to ensure that its trade secrets compliance code, policies, and procedures are effectively communicated to all directors, officers, employees, and, where necessary and appropriate, agents and business partners. These mechanisms shall include: (a) periodic training for all directors and officers, all employees, and, where necessary and appropriate, agents and business partners; and (b) corresponding certifications by all such directors, officers, employees, agents, and business partners, certifying compliance with the training requirements.

8.  The Company will maintain, or where necessary establish, an effective system for providing guidance and advice to directors, officers, employees, and,

4

where necessary and appropriate, agents and business partners, on complying with the Company's compliance code, policies, and procedures, including when they need advice on an urgent basis or in any foreign jurisdiction in which the Company operates.

### Internal Reporting and Investigation

9. The Company will maintain, or where necessary establish, an effective system for internal and, where possible, confidential reporting by, and protection of, directors, officers, employees, and, where appropriate, agents and business partners concerning violations of the trade secrets theft laws or the Company's compliance code, policies, and procedures.

10. The Company will maintain, or where necessary establish, an effective and reliable process with sufficient resources for responding to, investigating, and documenting allegations of violations of the trade secrets theft laws or the Company's compliance code, policies, and procedures.

### Enforcement and Discipline

11. The Company will implement mechanisms designed to effectively enforce its compliance code, policies, and procedures, including appropriately incentivizing compliance and disciplining violations.

12. The Company will institute appropriate disciplinary procedures to address, among other things, violations of the trade secrets theft laws and the

Company's compliance code, policies, and procedures by the Company's directors, officers, and employees. Such procedures should be applied consistently and fairly, regardless of the position held by, or perceived importance of, the director, officer, or employee. The Company shall implement procedures to ensure that where misconduct is discovered, reasonable steps are taken to remedy the harm resulting from such misconduct, and to ensure that appropriate steps are taken to prevent further similar misconduct, including assessing the internal controls, compliance code, policies, and procedures and making modifications necessary to ensure the overall trade secrets compliance program is effective.

*Third-Party Relationships*

13. The Company will institute appropriate risk-based due diligence and compliance requirements pertaining to the retention and oversight of all agents and business partners, including:

    a. properly documented due diligence pertaining to the hiring and appropriate and regular oversight of agents and business partners;

    b. informing agents and business partners of the Company's commitment to abiding by trade secrets theft laws, and of the Company's trade secrets compliance code, policies, and procedures; and

c. seeking a reciprocal commitment from agents and business partners.

14. Where necessary and appropriate, the Company will include standard provisions in agreements, contracts, and renewals thereof with all agents and business partners that are reasonably calculated to prevent violations of trade secrets theft laws, which may, depending upon the circumstances, include: (a) representations and undertakings relating to compliance with trade secrets laws; (b) rights to conduct audits of the agent or business partner to ensure compliance with the foregoing; and (c) rights to terminate an agent or business partner as a result of any breach of trade secrets theft laws; the Company's compliance code, policies, or procedures; or the representations and undertakings related to such matters.

*Mergers and Acquisitions*

15. The Company will develop and implement policies and procedures for mergers and acquisitions requiring that the Company conduct appropriate risk-based due diligence on potential new business entities, including appropriate Economic Espionage Act and trade secrets theft due diligence by legal, accounting, and compliance personnel.

16. The Company will ensure that the Company's compliance code, policies, and procedures regarding the trade secrets theft laws apply as quickly as is practicable to newly acquired businesses or entities merged with the Company

and will promptly:

    a. train the directors, officers, employees, agents, and business partners consistent with Paragraph 7 above on the trade secrets theft laws and the Company's compliance code, policies, and procedures; and

    b. where warranted, conduct an audit of all newly acquired or merged businesses as quickly as practicable.

*Monitoring and Testing*

17. The Company will conduct periodic reviews and testing of its compliance code, policies, and procedures designed to evaluate and improve their effectiveness in preventing and detecting violations of trade secrets theft laws and the Company's compliance code, policies, and procedures, considering relevant developments in the field and evolving international and industry standards.

## ATTACHMENT C

## REPORTING REQUIREMENTS

1. JASON ENERGY agrees that—subject to applicable United States and PRC law and regulations, including data privacy and national security laws—it will report to the Government, through its outside counsel, periodically, at no less than 12-month intervals during a four-year term, regarding remediation and implementation of the compliance program and internal controls, policies, and procedures described in Attachment B. Should the Company discover credible evidence, not already reported to the Government, that third-party confidential information was sought, received, or used by employees of the Company, the Company shall promptly report such conduct to the Government. During this four-year period, the Company shall: (1) conduct an initial review and submit an initial report, and (2) conduct and prepare at least three follow-up reviews and reports, as described below:

   a. By no later than one year from the date this Agreement is executed, the Company shall submit to the Government a written report setting forth a complete description of its remediation efforts to date, its proposals reasonably designed to improve the Company's internal controls, policies, and procedures for ensuring compliance with trade secrets theft laws, and the proposed scope of the subsequent reviews. The

report shall be transmitted to counsel of record. The Company may extend the time for issuance of the report with prior written approval of the Government.

b. The Company shall undertake at least three follow-up reviews, incorporating the Government's views on the Company's prior reviews and reports, to further monitor and assess whether the Company's policies and procedures are reasonably designed to detect and prevent violations of trade secrets theft laws.

c. The first follow-up review and report shall be completed by no later than one year after the initial review. The second follow-up review and report shall be completed by no later than one year after the completion of the preceding follow-up review. The third follow-up review and report shall be completed by no later than one year after the completion of the preceding follow-up review. The final follow-up review and report shall be completed and delivered to the Government no later than 30 days before the end of the Term.

d. The reports likely will include proprietary and confidential information. Moreover, public disclosure of the reports could discourage cooperation, impede pending or potential government investigations, and thus undermine the objectives of the reporting requirement. For

2

these reasons, among others, the reports and the contents thereof are intended to remain and shall remain non-public, except as otherwise agreed to by the parties in writing, or except to the extent that the Government determines in its sole discretion that disclosure would be in furtherance of the Government's discharge of its duties and responsibilities or is otherwise required by law.

e. The Company may extend the time for submission of any of the follow-up reports with prior written approval of the Government.